WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Roman Robaina,                          )    CIV 11-2168-PHX-PGR (MHB)
                                        )
                  Petitioner,           )    **REPORT AND RECOMMENDATION**
                                        )
vs.                                     )
                                        )
Charles L. Ryan, et al.,                )
                                        )
                  Respondents.          )
                                        )
_____)

TO THE HONORABLE PAUL G. ROSENBLATT, UNITED STATES DISTRICT JUDGE:

On January 26, 2012, Petitioner Roman Robaina, who is confined in the Arizona State Prison Complex-Safford, has filed a *pro se* First Amended Petition for Writ of Habeas Corpus (hereinafter "first amended habeas petition") pursuant to 28 U.S.C. § 2254 (Doc. 5). On July 3, 2012, Respondents filed an Answer, limited to affirmative defenses (Doc. 12), and Petitioner has not filed a Reply.

## BACKGROUND[1]

Petitioner, along with 63 others, were indicted by a State of Arizona, Maricopa County Grand Jury in September, 2007, on 161 felony counts: Petitioner was charged in the following 29:

• Conspiracy to commit participating in a criminal syndicate (Count 1)

_____

[1]Unless otherwise noted, the following facts are derived from the exhibits submitted with Doc. 12 – Respondents' Answer.

1    •      Conspiracy to commit illegally conducting an enterprise (Count 2)

2    •      Conspiracy to commit money laundering (Count 3)

3    •      Conspiracy to commit human smuggling (Count 4)

4    •      Conspiracy to commit assisting in a criminal syndicate (Count5)

5    •      Conspiracy to commit illegal use of a wire or electronic communication (Count 6)

6    •      Participating in a criminal syndicate (Count 7)

7    •      Illegally conducting an enterprise (Count 9)

8    •      Money laundering in the first degree (Counts 11)

9    •      Human smuggling (Counts 42, 48)

10   •      Illegal use of wire or electronic communication (Counts 63, 68, 72, 75, 77, 86, 106,

11          108, 109, 110, 111, 148, 149, 152, 153, 157, 159, 161)

12   (Exh. A.)

13          On February 20, 2008, Petitioner entered into a plea agreement with the state, wherein

14   he agreed to plead guilty to Counts 3, 4, 42, and 68.  (Exhs. C, D.)  The parties stipulated

15   that, as to Count 3, Petitioner would receive a prison sentence, and as to Counts 4, 42, and

16   68, Petitioner would be placed upon supervised probation upon his release from prison.

17   (Exh. C, at 2 ¶2.)  The plea agreement set forth the range of sentence on Count 3: a

18   presumptive sentence of 3.5 years, a minimum sentence of 2.5 years (2 years if the trial court

19   found exceptional circumstances), and a maximum sentence of 7 years (8.75 years if the trial

20   court found exceptional circumstances).  (Id., at 1-2, ¶1.)  Petitioner agreed to "judicial fact-

21   finding by a preponderance of the evidence as to any aspect or enhancement of sentence,"

22   and that the court, "[i]n making the sentencing determination, [] is not bound by the rules of

23   evidence."  (Id., at 3,¶7.)

24          Petitioner placed his initials next to all of the paragraphs of his plea agreement, and

25   signed at the end, indicating that he had "personally and voluntarily placed his initials in each

26   of the above boxes and signed the signature line below to indicate [he] read and approved all

27   of the previous paragraphs in [the] agreement, both individually and as a total binding

28   agreement."  (Exh. B, at 5.)  During the plea colloquy with the court, Petitioner confirmed

that he had read and approved the agreement, that he had gone over it with his attorney, and that he agreed with everything in it. (Exh. E, at 7-8.) Petitioner's attorney informed the court that he "spent approximately three hours in two sessions with an official court interpreter and we went through this particular plea extensively and asked many, many questions ...and I'm convinced that he thoroughly understands everything." (Id., at 8.) The court then asked Petitioner if his attorney's representation was true, and Petitioner responded, "Yes." (Id.) The court also confirmed the sentence range for each of the offenses to which Petitioner was pleading guilty, and the sentencing stipulation between the parties. (Id., at 9-11.)

Sentencing took place on June 2, 2008. (Exhs. J, K.) The court found the fact that the offenses were committed for pecuniary gain, and the fact that accomplices were utilized to be aggravating factors. (Exh. J, at 10.) The court did not find any mitigating factors, and therefore sentenced Petitioner to the maximum term of 7-years in prison on Count 3, and probation on the remaining counts, to begin upon Petitioner's release from prison. (Exh. K.)

A.      First Rule 32 Petition.

On June 28, 2008, Petitioner filed a Notice of Post-Conviction Relief and was appointed counsel. (Exhs. L, M.) On December 8, 2008, appointed counsel filed a Notice with the court that she was "unable to find any colorable claims for relief to raise on [Petitioner's] behalf." (Exh. N, at 2.) Thereafter, on December 17, 2008, Petitioner filed a *pro per* Petition for Post-Conviction relief (hereinafter "PCR"), in which he requested a sentence reduction based upon the following claims: (1) a lack of communication with counsel regarding sentence agreed to in Petitioner's plea agreement, (2) improper use of sentencing enhancement factors, (3) Petitioner's lack of understanding of his plea agreement, (4) the prosecutor falsely represented Petitioner's offense as a "long term crime" that was committed for financial gain, and (5) Petitioner's sentence should not have been enhanced because there were mitigating factors and the crime was a crime of passion. (Exh. P.)

After the State filed a detailed Response to Petitioner's PCR, Petitioner filed a second Notice of Post-Conviction Relief, followed by a Motion to Dismiss his "current" PCR. (Exhs. Q, S, T.) In Petitioner's request to dismiss his first PCR he indicated his intent to

raise, in a new PCR, claims of ineffective assistance of counsel and newly discovered evidence, and that the reason he had not asserted these claims in his first petition was that Petitioner is a Cuban national with "almost no English skills and [had] been reliant on interpreters." (Exh. T, at 1.) On May 11, 2009, the court construed Petitioner's Motion to Dismiss as a "motion to amend," and, finding that Petitioner had not demonstrated good cause as required by Ariz.R.Crim.P. 32.6, denied the motion. (Exh. V.) The court then granted Petitioner additional time to file a Reply to the State's Response to his PCR. (Id.) On July 31, 2009, Petitioner filed a petition for special action in the Arizona Court of Appeals, claiming that the state court abused its discretion in dismissing Petitioner's second Notice of Post-Conviction Relief. (Exh. Y.) On August 6, 2009, the Court of Appeals declined to accept jurisdiction. (Exh. Z.)

On October 5, 2009, the trial court summarily dismissed Petitioner's PCR, finding that:

> The only grounds the Defendant offers that are even relatively close to any of the reasons that Post-Conviction Relief are considered is the fact that some of the facts were untrue, which would fall under Rule 32.1(e) newly discovered material.

> However, the facts that the Defendant offers, which are that the offense was not long lasting and that the crime was not committed solely for financial gain. These facts are not newly discovered material and even though he states that he was unable to communicate this, Counsel for Defendant filed a sentencing recommendation that stated Mr. Robaina was doing this because he thought he was helping the people that he was bringing into the country.

> As far as the remainder of Mr. Robaina's arguments, lack of communication between Defendant and attorney does not seem to have existed as Counsel for Defendant filed a Sentencing recommendation seemingly based on a statement from Defendant.

> Accordingly, Mr. Robaina obviously communicated with his Counsel. As to the Defendant's next argument that he did not understand what he was agreeing to, the Defendant not only signed and initialed all appropriate portions of the Plea Agreement, he also stated in open court that he understood to what he was doing and saying and that he had no questions.

> Finally, the Defendant waived his right to have a jury look to his mitigating/aggravating factors and furthermore, since an aggravated sentence was not given this point is moot.

> Furthermore, the State correctly cites State v. Brown, 212 Ariz. 225, 231 (2006), which held that the Sixth Amendment right to a jury trial with respect

> to aggravating factors necessary to enhance a sentence does not apply if the defendant waived his right in a plea of guilty to jury fact finding on aggravating circumstances.
>
> Here, since the Defendant waived his right to jury fact finding on weighing the mitigating factors against the aggravating factors, the Judge has the right to set the sentence as he sees fit.  This was done in this case and accordingly the Defendant has no standing to address the aggravating and mitigating circumstances in this case.

(Exh. AA.)

Petitioner did not file a petition for review in the Arizona Court of Appeals.

**B.      Petitioner's Motion to Correct Presentence Incarceration Credits.**

On July 6, 2010, Petitioner filed a Motion to Correct Pre-Sentence Incarceration Credits, alleging that he was entitled to 20-days additional presentence incarceration credits toward his sentence.  (Exh. BB.)  The State filed a response indicating its agreement that Petitioner was entitled to 19-days additional credit.  (Exh. CC.)  On August 23, 2010, the court entered an order giving Petitioner credit for an additional 19-days of presentence incarceration toward his sentence. (Exh. DD.)

**C.      Second PCR Proceeding.**

On October 24, 2011, Petitioner filed a second *Pro Per* PCR, arguing that new Arizona case-law, as applied, would establish his innocence, that there was insufficient evidence to support his conviction, and that his Constitutional rights were otherwise violated. (Exh. EE.)  The state moved to dismiss the petition, arguing that Petitioner's claims were precluded under Rule 32, Ariz.R.Crim.P., because they were raised or should have been raised in Petitioner's first PCR.  (Exh. FF.)  On November 14, 2011, the trial court dismissed Petitioner's second PCR, reasoning:

> It is difficult to determine if the defendant has put forth any cognizable claims under Ariz.R.Crim.P. 32.1.  At first glance, it appears that the defendant is claiming, pursuant to Ariz.R.Crim.P. 32.1(g), that there has been a significant change in the law that if applied retroactively to the defendant's case, it would probably affect the outcome.  To support his argument, the defendant cites seven different Arizona Court of Appeal and Arizona Supreme Court cases.  However, all of the cases cited by the defendant had been decided by the respective courts many years prior to the defendant committing the crimes he was subsequently convicted of.  Therefore, the defendant's claim under Ariz.R.Crim.P. 32.1(g) would fail.

The defendant's petition could also be read as making a claim under Ariz.R.Crim.P. 32.1(a) which states that a defendant may be entitled to post-conviction relief if their sentences or convictions were obtained in violation of their constitutional rights. Here, it appears that the defendant is claiming that his convictions were obtained on the grounds of insufficient evidence. However, it is important to note that the defendant chose to waive his right to trial and to have evidence submitted to a jury. Therefore, any argument made in regards to lack of evidence will not be relevant here.

It also appears that the defendant may be making an extremely delayed request for reconsideration of the Court's dismissal of the defendant's previous Rule 32 proceeding. The Court dismissed the defendant's previous Rule 32 proceeding on October 6, 2009. Any motion for reconsideration pursuant to Ariz.R.Crim.P. 32.9(a) must be submitted to the Court within 15 days of the decision being challenged. The Court will not entertain such a motion at this time considering more than 2 years have passed.

A defendant must comply strictly with Rule 32 by asserting substantive grounds which bring him within the provisions of the Rule in order for the Court to grant relief. *State v. Manning*, 143 Ariz. 139, 141, 692 P.2d 318, 320 (1984). Defendant fails to state a claim for which relief can be granted in an untimely Rule 32 proceeding. Rule 32.4(a).

(Exh. GG.)

Petitioner did not seek review of the court's dismissal in the Arizona Court of Appeals.

D.    Petitioner's Motion to Amend to Existing Post Conviction Relief to Have Ruling Appeal Dismissal Review.

On December 2, 2011, Petitioner filed in the trial court a Motion to Amend to Existing Post Conviction Relief to Have Ruling Appeal Dismissal Review. (Exh. HHH.) Although filed as a pleading in court, Petitioner addressed the motion to the "Office of the Attorney General," and indicated therein that he is "writing this motion to request that the Rule 32 management unit review the decision to not further proceed in Petitioner's post-conviction relief." (Id.) This motion was filed subsequent to Petitioner's filing of his initial habeas petition in this Court. (Doc. 1.) Petitioner's initial habeas petition, filed on November 2, 2011, was dismissed *sua sponte*, without prejudice, by this Court for failure to name the proper Respondent, and for failure to allege federal constitutional rights as to each claim. (Doc. 4.) Petitioner then filed his first amended habeas petition on January 23, 2012. (Doc. 5.) According to Respondents, at the time of the filing of their Answer to Petitioner's first amended habeas petition, the trial court had not ruled on Petitioner's motion. (Doc. 12, at 9.)

In their Answer to Petitioner's first amended habeas petition, Respondents argue that Petitioner's petition is untimely and should be dismissed, as it was filed past the 1-year deadline imposed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. §2244(d).

## DISCUSSION

The AEDPA imposes a statute of limitations on federal petitions for writ of habeas corpus filed by state prisoners.  See 28 U.S.C. § 2244(d)(1).  The statute provides:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of –
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

An "of-right" petition for post-conviction review under Arizona Rule of Criminal Procedure 32, which is available to criminal defendants who plead guilty, is a form of "direct review" within the meaning of 28 U.S.C. § 2244(d)(1)(A).  See Summers v. Schriro, 481 F.3d 710, 711 (9th Cir. 2007).  Therefore, the judgment of conviction becomes final upon the conclusion of the Rule 32 of-right proceeding, or upon the expiration of the time for seeking such review.  See id.

Additionally, "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward" the limitations period. 28 U.S.C. § 2244(d)(2); see Lott v. Mueller, 304 F.3d 918, 921 (9th Cir. 2002).  A state petition that is not filed, however, within the state's required time limit is not "properly filed" and, therefore, the petitioner is not entitled to statutory tolling.  See Pace v. DiGuglielmo, 544 U.S. 408, 413 (2005).

1    In Arizona, post-conviction review is pending once a notice of post-conviction relief

2  is filed even though the petition is not filed until later.  See Isley v. Arizona Department of

3  Corrections, 383 F.3d 1054, 1056 (9th Cir. 2004).  An application for post-conviction relief

4  is also pending during the intervals between a lower court decision and a review by a higher

5  court.  See Biggs v. Duncan, 339 F.3d 1045, 1048 (9th Cir. 2003) (citing Carey v. Saffold,

6  536 U.S. 214, 223 (2002)).  However, the time between a first and second application for

7  post-conviction relief is not tolled because no application is "pending" during that period.

8  See id.  Moreover, filing a new petition for post-conviction relief does not reinitiate a

9  limitations period that ended before the new petition was filed.  See Ferguson v. Palmateer,

10  321 F.3d 820, 823 (9th Cir. 2003).

11    The Court finds that Petitioner's Petition for Writ of Habeas Corpus is untimely.

12  Petitioner's conviction became final on November 4, 2009, which is 30-days after his first,

13  timely, of-right PCR was dismissed by the trial court, as Petitioner did not seek appellate

14  review.  See Ariz.R.Crim.P. 32.9(c); see also Gonzalez v. Thaler, — U.S. —, —; 132 S.Ct.

15  641, 656 (2012) (for a state prisoner who does not seek review in the state's highest court,

16  the judgment becomes final on the date that the time for seeking such review expires).  Thus,

17  absent statutory or equitable tolling, the deadline for Petitioner to file his habeas petition was

18  November 4, 2010, thus rendering Petitioner's first habeas petition, filed on November 4,

19  2011, and his subsequently filed first amended habeas petition untimely.  Because

20  Petitioner's Second PCR was filed after the deadline to file a habeas petition had expired,

21  even if this Court were to find that the second PCR had not been dismissed on procedural

22  grounds, its filing would not restart the clock.   See Ferguson, 321 F.3d at 823; Jiminez v.

23  Rice, 276 F.3d 478, 482 (9th Cir. 2001).  Additionally, although Petitioner's motion relating

24  to presentence incarceration credits likely does not constitute an application for post-

25  conviction or other collateral review within the meaning of the AEDPA, the motion was only

26  pending for 48-days, thus hypothetically extending the AEDPA statute of limitations

27  expiration date to December 22, 2010.  Petitioner's habeas petition would still be untimely

28  even if Petitioner was entitled to statutory tolling of that period.

1    Although Petitioner is not entitled to sufficient statutory tolling to render his habeas

2    petition timely, the statute of limitations under the AEDPA is subject to equitable tolling in

3    appropriate cases.  See Holland v. Florida, —— U.S. ——, ——; 130 S.Ct. 2549, 2560 (2010).

4    However, for equitable tolling to apply, a petitioner must show "'(1) that he has been

5    pursuing his rights diligently and (2) that some extraordinary circumstances stood in his

6    way'" and prevented him from filing a timely petition.  Id. at 2562 (quoting Pace, 544 U.S.

7    at 418).

8    Tolling is appropriate when "'extraordinary circumstances' beyond a [petitioner's]

9    control make it impossible to file a petition on time."  Roy v. Lampert, 465 F.3d 964, 969

10   (9th Cir. 2006) (citation omitted); see Miranda v. Castro, 292 F.3d 1063, 1066 (9th Cir. 2002)

11   (stating that "the threshold necessary to trigger equitable tolling [under AEDPA] is very high,

12   lest the exceptions swallow the rule") (citation omitted).  "When external forces, rather than

13   a petitioner's lack of diligence, account for the failure to file a timely claim, equitable tolling

14   of the statute of limitations may be appropriate."  Miles v. Prunty, 187 F.3d 1104, 1107 (9th

15   Cir. 1999).  Petitioner must also establish a "causal connection" between the extraordinary

16   circumstance and his failure to file a timely petition.  See Bryant v. Arizona Attorney

17   General, 499 F.3d 1056, 1060 (9th Cir. 2007).

18   Here, Petitioner has not proffered any extraordinary circumstance that would justify

19   equitable tolling.  Petitioner's pro se status, indigence, limited legal resources, ignorance of

20   the law, or lack of representation during the applicable filing period do not constitute

21   extraordinary circumstances justifying equitable tolling.  See, e.g., Rasberry v. Garcia, 448

22   F.3d 1150, 1154 (9th Cir. 2006) ("[A] pro se petitioner's lack of legal sophistication is not,

23   by itself, an extraordinary circumstance warranting equitable tolling.").  In Petitioner's first

24   amended habeas petition, Petitioner's listed excuse for not filing his habeas petition on time

25   was his "lack of awareness" that he could file a habeas petition while he had a PCR

26   proceeding pending.  (Doc. 5, at 11.)  The record reveals however, that there were many

27   months during the running of the statute of limitations that Petitioner had no active post-

28

1   conviction proceedings pending.  Accordingly, Petitioner is not entitled to equitable tolling
2   and his habeas petition is untimely.

3        Alternatively, even if Petitioner had filed his habeas petition on time, none of his
4   claims were presented to the Arizona Court of Appeals.  A state prisoner must exhaust his
5   remedies in state court before petitioning for a writ of habeas corpus in federal court.  See
6   28 U.S.C. § 2254(b)(1) and (c); Duncan v. Henry, 513 U.S. 364, 365-66 (1995); McQueary
7   v. Blodgett, 924 F.2d 829, 833 (9th Cir. 1991).  To properly exhaust state remedies, a
8   petitioner must fairly present his claims to the state's highest court in a procedurally
9   appropriate manner.  See O'Sullivan v. Boerckel, 526 U.S. 838, 839-46 (1999).  In Arizona,
10  a petitioner must fairly present his claims to the Arizona Court of Appeals by properly
11  pursuing them through the state's direct appeal process or through appropriate post-
12  conviction relief.  See Swoopes v. Sublett, 196 F.3d 1008, 1010 (9th Cir. 1999); Roettgen v.
13  Copeland, 33 F.3d 36, 38 (9th Cir. 1994).

14       In Arizona, claims not previously presented to the state courts via either direct appeal
15  or collateral review are generally barred from federal review because an attempt to return to
16  state court to present them is futile unless the claims fit in a narrow category of claims for
17  which a successive petition is permitted.   See Ariz.R.Crim.P. 32.1(d)-(h) & 32.2(a)
18  (precluding claims not raised on appeal or in prior petitions for post-conviction relief, except
19  for narrow exceptions); Ariz.R.Crim.P. 32.4 (time bar).  Petitioner's claims are procedurally
20  defaulted because, as evidenced by the state court record, he did not present them to the
21  appellate court, and any further attempt by Petitioner to properly exhaust his claims  would
22  be futile.

23       The federal court will not consider the merits of a procedurally defaulted claim unless
24  a petitioner can demonstrate that a miscarriage of justice would result, or establish cause for
25  his noncompliance and actual prejudice.  See Schlup v. Delo, 513 U.S. 298, 321 (1995);
26  Coleman v. Thompson, 501 U.S. 722, 750-51 (1991); Murray, 477 U.S. 478, 495-96 (1986).
27  Pursuant to the "cause and prejudice" test, a petitioner must point to "some external objective
28  factor" that prevented him from following the procedural rules of the state court and fairly

1   presenting his claim. <u>Stokley v. Ryan</u>, 659 F.3d 802, I811 (9th Cir. 2011).  Regarding the

2   "miscarriage of justice," the Supreme Court has made clear that a fundamental miscarriage

3   of justice exists when a Constitutional violation has resulted in the conviction of one who is

4   actually innocent, or the subject of fundamentally unjust incarceration. <u>See</u> <u>Murray</u>, 477 U.S.

5   at 495-96.  Petitioner makes no showing that a miscarriage of justice would result if this

6   Court were not to consider his claims, or cause for his noncompliance and actual prejudice.

7                                                    **CONCLUSION**

8          Having determined that Petitioner's habeas petition is untimely, and alternatively that

9   Petitioner's claims are procedurally defaulted, the Court will recommend that Petitioner's

10  First Amended Petition for Writ of Habeas Corpus, (Doc. 5), be denied and dismissed with

11  prejudice.

12         **IT IS THEREFORE RECOMMENDED** that Petitioner's First Amended Petition

13  for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 5) be **DENIED** and

14  **DISMISSED WITH PREJUDICE**;

15         **IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and leave

16  to proceed *in forma pauperis* on appeal be **DENIED** because the dismissal of the Petition is

17  justified by a plain procedural bar and jurists of reason would not find the procedural ruling

18  debatable.

19         This recommendation is not an order that is immediately appealable to the Ninth

20  Circuit Court of Appeals.  Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of

21  Appellate Procedure, should not be filed until entry of the district court's judgment.  The

22  parties shall have fourteen days from the date of service of a copy of this recommendation

23  within which to file specific written objections with the Court.  <u>See</u> 28 U.S.C. § 636(b)(1);

24  Rules 72, 6(a), 6(b), Federal Rules of Civil Procedure.  Thereafter, the parties have fourteen

25  days within which to file a response to the objections.  Failure timely to file objections to the

26  Magistrate Judge's Report and Recommendation may result in the acceptance of the Report

27  and Recommendation by the district court without further review.  <u>See</u> <u>United States v.</u>

28  <u>Reyna-Tapia</u>, 328 F.3d 1114, 1121 (9th Cir. 2003).  Failure timely to file objections to any

1  factual determinations of the Magistrate Judge will be considered a waiver of a party's right

2  to appellate review of the findings of fact in an order or judgment entered pursuant to the

3  Magistrate Judge's recommendation.  See Rule 72, Federal Rules of Civil Procedure.

4       DATED this 14th day of January, 2013.

5

6

7                                          Michelle H. Burns
                                           United States Magistrate Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28